CITY OF FAYETTEVILLE *v.* McILROY
BANK & TRUST COMPANY et al

82-200                                    647 S.W.2d 439

Supreme Court of Arkansas
Opinion delivered March 7, 1983
[Rehearing denied April 11, 1983.*]

---

*ADKISSON, C.J., and HOLT and PURTLE, JJ., would grant rehearing.

*James N. McCord,* City Atty., for appellant.

*Ball, Mourton & Adams,* for appellees.

GEORGE ROSE SMITH, Justice. In 1973 the City of Fayetteville adopted a comprehensive ordinance regulating the size, height, and setback requirements of signs within the city. The preamble recited among other considerations that the city's scenic resources had contributed greatly to its economic development, that the scattering of signs throughout the city was detrimental to the preservation of those scenic resources, and that a purpose of the ordinance was to preserve the city's natural beauty. The ordinance was designed to regulate all signs erected after its effective date, January 19, 1973, and to eventually eliminate existing signs not conforming to the restrictions in the ordinance. To accomplish the latter purpose the ordinance directed that all on-site non-conforming signs either be altered to conform or be removed within seven years.

Several owners of non-conforming signs at once brought suit for a judgment declaring the ordinance to be unconstitutional on its face and also in its application to them. The trial court held the ordinance to be unconstitutional as applied to the plaintiffs. We affirmed that decision except as to certain flashing signs that were hazardous to traffic. *City of Fayetteville* v. *S & H, Inc.,* 261 Ark. 148, 547 S.W.2d 94 (1977), noted in 32 Ark. L. Rev. 797 (1979). Three opinions were written in the case, but no opinion was approved by a majority. The case at bar involves the same ordinance, the pertinent provisions of which are quoted in *S & H.*

After the seven-year grace period for non-conforming signs had expired, the present suit for a declaratory judgment and injunctive relief was filed on September 18, 1980, by the five appellees — a bank, a liquor dealer, two motel owners, and a sign company, who together own six non-conforming signs in a commercial zone in Fayetteville. The parties fully developed the case by stipulation as to facts and

as to what various witnesses would testify. The chancellor, finding the case to be governed by the *S & H* decision, held the ordinance unconstitutional as a taking of the plaintiffs' property without just compensation. The decree enjoined the enforcement of the ordinance against these plaintiffs. Our jurisdiction of the case is readily apparent. Rule 29 (1) (a) and (c).

The appellees' six signs were lawfully erected between August, 1956, and May, 1969, with an average age today of more than 20 years. There is no proof of the actual value of any of the signs. Their salvage value is negligible. The president of a sign company would testify that the cost of constructing conforming replacements would range from $1,150 for a motel sign to $4,356 for a restaurant sign owned by the appellee sign company. All the signs have been fully depreciated for federal income tax purposes. If the seven-year amortization period is found to be reasonable, but if it is also found to be unreasonable to require the plaintiffs to remove the signs, the city will remove them without cost to the plaintiffs and preserve the salvage for them.

It is stipulated that the plaintiffs' witnesses would testify that each of their signs has a remaining useful life of 15 years. The city's witnesses would testify that in no instance is that remaining useful life more than 5 years. The plaintiffs do not contend that they would suffer businesses losses if they are required to replace their non-conforming signs with conforming ones. Neither do the plaintiffs contend that their real property would decrease in value if they are required to remove the non-conforming signs.

On the facts of this case we hold that the ordinance is valid as to these appellees, that the signs must be removed.

In view of the strong trend of the decisions in the various states during the past thirty years or more, it can hardly be doubted that an ordinance such as this one is valid as to signs to be erected in the future. At one time the courts held pretty generally that zoning ordinances could not be sustained if they rested primarily or solely upon aesthetic considerations, but that point of view is disappearing. *See*

annotations, 21 A.L.R.3d 1222, 1235 (1968); 81 A.L.R.3d 486, 511 (1977). If the inhabitants of a city or town want to make the surroundings in which they live and work more beautiful or more attractive or more charming, there is nothing in the constitution forbidding the adoption of reasonable measures to attain that goal.

The difficulty, as in the case at bar, is created by the presence of existing unsightly structures. Billboards and junkyards are the most common examples. At first it was widely throught that the exemption of non-conforming structures would solve the problem on the assumption that time would repair the mistakes of the past. That, however, did not happen, as Chief Justice Kenison explained in detail in *Lachapelle* v. *Town of Goffstown*, 107 N.H. 485, 225 A.2d 624, 22 A.L.R.3d 1128 (1967). Rather to the contrary, non-conforming structures often increased in value, being monopolies protected by the zoning law itself from the intrusion of competitors.

Of course, zoning measures were unknown to the common law. It is thus not surprising that a zoning problem such as the elimination of non-conforming uses cannot be satisfactorily solved by the common law, either by the exercise of eminent domain or by resort to the law of nuisances. Ultimately the courts came to realize that the same principles that justify zoning laws themselves must also be invoked to eliminate non-conforming uses. A reasonable accommodation must be found between the public welfare and private ownership.

The most successful solution has been the enactment of amortization laws, such as the Fayetteville ordinance now at issue. The American Law Institute has summed up the prevailing view: "Amortization regulations were established on the principle that a property owner should be able to recoup his investment in an existing land use within a particular period of time, but that after that time he could reasonably be forced to discontinue the use without payment of compensation. By varying the time period in relation to the landowner's investment the proponents of amortization sought to obtain judicial support by comparing the tech-

nique to depreciation as used for accounting and tax purposes." A.L.I., A Model Land Development Code, p. 146 (1976). After stating that for the most part the courts have been sympathetic to amortization, the text cites many decisions, including ten billboard or sign cases. In that category the approved amortization periods have ranged from one year to five years. A more complete discussion of the amortization cases is to be found in Williams, American Land Planning Law, § 116.06 (1975). *See* also, Wright, Zoning Law in Arkansas: A Comparative Analysis, 3 UALR L.J. 421, 444 (1980). There can be no doubt that the principle of amortization is firmly embedded in the law.

We recognize that the amortization period must be fair to the property owners, but among the many cases approving the theory of amortization we find none suggesting that a period of seven years is unfair to sign owners. Moreover, this litigation has prolonged the life of the signs by another three years. As the concurring opinion in *S & H* stated: "The regulation of signs by cities is long overdue." If an ordinance as moderate as the one before us cannot be sustained, the possibility of effective regulation becomes almost non-existent.

Reversed and remanded for any necessary proceeding with respect to the removal of the signs.

ADKISSON, C.J., and HOLT and PURTLE, JJ., dissent.

FRANK HOLT, Justice, dissenting. Art. 2, § 22, Constitution of Arkansas (1874), states:

> The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation.

The trial court held the application of the ordinance in question violated this constitutional provision, following *City of Fayetteville* v. *S. & H., Inc.*, 261 Ark. 148, 547 S.W.2d 94 (1977). No argument is made that the signs do not

constitute "private property" or that their forced removal does not involve taking, appropriating or damaging them.

Essentially, I understand the majority holds not only that an ordinance, as to signs erected in the future, can be sustained when based primarily or solely on aesthetic considerations, but also that pre-existing, non-conforming uses can be eliminated without payment of just compensation by an amortization ordinance primarily or solely for aesthetic purposes.

Although the majority is correct in stating the trend is toward upholding the amortization method of eliminating non-conforming uses, the cases are in conflict on this issue as they are on whether aesthetic improvement is a proper goal for which the police power may be invoked. For example see *Board of Supervisors of James City County* v. *Rowe*, 216 Va. 128, 216 S.E.2d 199 (1975); and *Hoffman* v. *Kinealy*, 389 S.W.2d 745 (Mo. 1965).

Art. 2, § 22 states that the right of property exists before and is higher than the sanction given it in the constitution itself, and it is in light of that view that we should interpret the further provision therein that private property shall not be taken, appropriated or damaged for public use without just compensation. As Professor Wright observes, the courts which have set the modern trend in this area would regard that view of property rights as obsolete. Wright, Zoning Laws in Arkansas: A Comparative Analysis, 3 U.A.L.R. L.J. 421, 435 (1980). However, it is the theory of property rights found in our constitution and not the theory of property rights adopted by courts of other states that binds us.

In *Blundell* v. *City of West Helena*, 258 Ark. 123, 522 S.W.2d 661 (1975), we held that a property owner has vested rights in a pre-existing and non-conforming use of his property. Contrary to the suggestion of the majority, an affirmance here would not render almost non-existent the possibility of effective regulation. All we need to decide today is that the vested rights of an owner of private property cannot be taken without just compensation where its use is not inimical to the public health, safety and morals and the

sole or primary justification for the taking is for aesthetic improvement. We recognized in *City of Fayetteville* v. *S. & H., Inc., supra,* that non-conforming uses can be eliminated by this very amortization ordinance when it is done in furtherance of the public health, safety or morals. Furthermore, where the purpose is not to promote the public health, safety or morals, the city can achieve its regulatory goals by exercising its power of eminent domain and paying just compensation.

I would affirm the chancellor.

ADKISSON, C.J., and HOLT, J., join in this dissent.