DONREY COMMUNICATIONS CO., INC. (Formerly American Television Co., Inc., d/b/a Donrey Outdoor Advertising Co.) *v.* CITY OF FAYETTEVILLE, Arkansas

83-67                                        660 S.W.2d 900

Supreme Court of Arkansas
Opinion delivered October 17, 1983
[Opinion Amended on Denial of Rehearing December 19, 1983.]

*Cypert & Roy,* by: *Michael H. Mashburn,* and *Donrey Media Group,* by: *George O. Kleier* and *Richard F. Cooper,* for appellant.

*James N. McCord,* City Atty., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Donrey Communications Company, Inc., maintains sixty billboards for commercial advertising and noncommercial messages within the City of Fayetteville. They are "off-site signs" as the advertising or message on each billboard is about something not sold or offered on the land where the billboards are located. They consist of "standard poster panels" which are twelve feet by twenty-five feet, or 300 square feet, and "painted bulletins" which are fourteen feet by forty-eight feet, or 672 square feet. Two Fayetteville ordinances restrict the size and location of appellant's billboards. One is a zoning ordinance and the other is a comprehensive sign ordinance.

The zoning ordinance, No. 1747, enacted in 1970, limits the location of billboards to property zoned C-2. Most of appellant's billboards are located on property zoned C-2, or

thoroughfare commercial district, and a few are located on property zoned C-3, central business district, or I-1, light industrial and heavy commercial district.

The comprehensive sign ordinance, No. 1893, restricts the size of both on-site and off-site freestanding signs to a maximum of 75 square feet and prescribes minimum setback requirements from street right-of-way for the signs. Appellant's billboards conform neither to the size restrictions nor to the setback requirements. Its billboards were erected from 12 to 24 years ago at a cost of $500 to $1,000 per sign and, at the time of erection, complied with all applicable ordinances.

Section 17B-5 (A) 2 of the sign ordinance provides that off-site nonconforming signs shall be removed or shall be altered to conform with the provisions of the ordinance by January 19, 1977, which was four years' amortization from the effective date of the ordinance. The zoning ordinance, in Art. 4, § 5 (g), requires that nonconforming signs be removed by the same date.

This case was filed July 2, 1971, over twelve years ago, and came to this court in 1973. *American Television Co., Inc., d/b/a Donrey Outdoor Advertising Co. et al v. City of Fayetteville*, 253 Ark. 760, 489 S.W.2d 754 (1973). It was reversed, and the pleadings were amended to test the constitutionality of the city's restrictions of the size and location of billboards. On cross-motions for summary judgment the trial court upheld the billboard restrictions and amortization requirement, as applied to appellant, and granted the city's prayer for a mandatory injunction ordering appellant to comply with the two ordinances. We affirm the decree. Rule 29 (1) (c) provides that the appeal of cases testing the constitutionality of a municipal ordinance shall be heard in this court.

Appellant first contends that, when read together, the two ordinances violate appellant's right under the First Amendment to the United States Constitution.

Billboards are noncommunicative structures designed to stand out and apart from their surroundings, but also they

are a medium of communication warranting First Amendment protection. The government has a legitimate interest in controlling the non-communicative aspects of the medium but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490 (1981).

Alexander Meiklejohn in *Free Speech and Its Relation to Self-Government* 27 (1948) wrote that the First Amendment "does not forbid the abridging of *speech*. But . . . it does forbid the abridging of *the freedom of speech.*" He argues that the phrase "the freedom of speech" implies rules regarding procedure, or order. He used the New England town meeting as his model to demonstrate there could be no freedom of speech if everyone spoke at once but, at the same time, any argument relevant to the issue before the meeting, no matter how unpopular, is protected by the strong language of the amendment. In this context the Supreme Court of the United States has ruled that restrictions on time, place and manner are permissible if "they are justified without reference to the content of the regulated speech, . . . serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council,* 425 U.S. 748 at 771 (1976).

"The freedom of speech" is not a self-defining phrase. The speech which cannot be abridged is that which is protected. Nor is the word "abridging" unambiguous. What is protected and how extensively it is protected is determined on a case by case basis by the courts. *See* Wellington, On Freedom of Expression, 88 Yale L. J. 1105 (1979).

The ordinances, as applied to appellant, its advertisers and the viewers of the billboards are content neutral; they merely restrict their size, height and location. The ordinances seek to implement a substantial governmental interest and they directly advance that interest. *See Central Hudson Gas & Electric Corp.* v. *Public Service Commission,* 447 U.S. 557 (1980) and *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490 (1981).

The preamble to the sign ordinance provides that the purpose of the ordinance is to promote the reasonable, orderly and effective display of signs, to promote safety and to preserve natural beauty. The city board of directors made the following findings:

> That the uncontrolled proliferation of signs is hazardous to the users of streets and highways within the limits of the city of Fayetteville, Arkansas.
>
> That a large and increasing number of tourists have been visiting the City of Fayetteville, Arkansas, and as a result the tourist industry is a direct source of income for citizens of said city, with an increasing number of persons directly or indirectly dependent upon the tourist industry for their livelihood.
>
> Scenic resources are distributed throughout the city, and have contributed greatly to its economic development, by attracting tourists, permanent and part-time residents, and new industries and cultural facilities.
>
> The scattering of signs throughout the city is detrimental to the preservation of those scenic resources, and so to the economic base of the city, and is also not an effective method of providing information to tourists about available facilities.

The goals which the city seeks to further are substantial governmental goals. This matter was laid to rest in *Metromedia, id.,* at 507, 508.

> Nor can there be substantial doubt that the twin goals that the ordinance seeks to further — traffic safety and the appearance of the city — are substantial governmental goals. It is far too late to contend otherwise with respect to either traffic safety, *Railway Express Agency, Inc.* v. *New York,* 336 U.S. 106, 93 L.Ed. 533, 69 S. Ct. 463 (1949), or esthetics, see *Penn Central Transportation Co.* v. *New York City,* 438 U.S. 104, 57 L.Ed.2d 631, 98 S. Ct. 2646 (1978); *Village of Belle Terre* v. *Boraas,* 416 U.S. 1, 39 L.Ed.2d 797, 94 S. Ct. 1536 (1974); *Berman* v. *Parker,* 348 U.S. 26, 33, 99 L.Ed. 27, 75 S. Ct. 98 (1954).

Hand in hand with aesthetics is tourism, one of Fayetteville's important industries and a substantial economic resource.

The ordinances under attack are as narrowly drawn as is practically and legally possible and the city has gone no further than necessary to meet its goals. This type of ordinance directly advances the legitimate governmental interests in traffic safety, the aesthetic landscape and the tourism industry. *See Metromedia, Inc.* v. *San Diego, id.,* pp. 508, 509, 510 and 511.

The next First Amendment issue is, do the restrictions close a channel for communication? Initially, we note that this is not one of those cases where a channel of communication is completely prohibited in the name of some governmental purpose, such as prohibiting the circulation of handbills under the rationale of preventing litter. *See Schneider* v. *State,* 308 U.S. 147 (1939). Here, the billboard channel of communication is not prohibited, it is only limited as to size and place. The only questionable aspect of the limitaiton in size is that advertisements or messages which are prepared for nationwide and statewide distribution are prepared for the 300 square feet standard poster panels and they will be eliminated. The use of the standard poster panel allows an inexpensive form of communication. However, the appellant has not demonstrated that the size cannot be reduced to 75 square feet without unduly increasing the cost of this channel. The affidavit of Lloyd E. Schuh, Jr. is explanative:

> I develop and contract for all advertising by Educare Centers. Educare Centers has used standardized outdoor advertising poster panels on a regular basis since 1973. We now have 12-month contracts for outdoor advertising on standardized poster panels in all three cities where we operate.
> Educare Centers currently has its advertisements on 10 poster panels in Little Rock, 6 poster panels in Fort Smith and 1 poster panel in Fayetteville. I design seven different advertisements and have 20 copies made of each design. All 17 poster panels, including the one

in Fayetteville, will carry identical advertisements with the seven designs being rotated during the year.

By having 20 copies of each design printed, the average poster cost is $35.00. If I were forced to order single copies of each design in an oddball size for Fayetteville it would incresae the cost of those copies by nearly 50%.

Increasing the average poster cost by 50%, or from $35 to $52.50, would not eliminate billboards as a channel of communication; it could only moderately affect the cost. The law is settled that "a municipality may enforce a rule that curtails the effectiveness of a particular means of communication." *Metromedia, Inc.* v. *San Diego, id.*, at 550.

Similarly, in *Yarbrough* v. *Arkansas State Highway Comm'n,* 260 Ark. 161, 539 S.W.2d 419 (1976), we rejected appellant's contention that the Highway Beautification Act, Ark. Stat. Ann. § 76-2501, et seq., deprived him of his right to advertise. We stated:

We find that he has not been denied the right to advertise, but the right has been limited by valid restrictions . . . . Furthermore, appellants had no vested right to capitalize on the flow of traffic over Interstate 40.

Appellant makes an economic, or loss of income, argument but we decline to adopt that approach to the First Amendment. The First Amendment affords less protection to the medium than the message. *See* Kaufman, The Medium, The Message And The First Amendment, 45 N.Y.U. L. Rev. 761 (1970). We find the ordinances do not violate appellant's First Amendment rights.

Appellant's next point of appeal is that the trial court erred in granting a summary judgment in favor of the City and erred in refusing to grant summary judgment in its favor because (a) legislation which prohibits a lawful business is unreasonable as a matter of law, and (b) the declared purpose of the ordinance has no substantial connection with the real purpose.

Ordinances limiting the right to maintain billboards are not unreasonable as a matter of law. In *Board of Adjustment of Fayetteville* v. *Osage Oil & Transportation, Inc.,* 258 Ark. 91, 522 S.W.2d 836 at 838 (1975), we stated:

> The outdoor advertising sign . . . is not maintainable as a matter of right; such signs have been prohibited altogether. See the extended discussion in *General Outdoor Advertising Co.* v. *Dept. of Public Works,* 289 Mass. 149, 193 N.E. 799 (1935).

Appellant also contends a genuine dispute exists over a material fact because the declared purpose is not related to the restrictions on the size and location of the billboards. This same argument was made and rejected in *Metromedia, Inc.* v. *City of San Diego, supra.* In Board of Adjustment of Fayetteville v. *Osage Oil & Transportation, Inc., supra,* we stated:

> The basic power of a municipality to regulate the size and location of billboards and other commercial signs has been sustained in so many jurisdictions that it would be a waste of time and effort to cite the cases. Such regulations have been upheld upon many grounds, including the promotion of traffic safety, the control of potentially hazardous structures, and the fundamental considerations of city planning and city beautification that underlie the zoning concept itself.

Appellant points out that billboards are prohibited in districts zoned commercial and industrial but the following businesses are permitted there: dance halls, taverns, truck repair and service establishments, drag strips, meat slaughtering, auto salvage, junk yards, scrap metal, stockyards and wrecking and demolition services. From that, appellant contends that the zoning ordinance bears no reasonable relationship to aesthetic considerations and, consequently, summary judgment should have been granted to appellant as a matter of law.

Perhaps dance halls, taverns, truck repair establishments, etc., arguably can be said to be ugly, but it does not

follow that these businesses cannot be carried on among more pleasant surroundings. The city board obviously concluded that the appearance of the commercial and industrial districts would be aesthetically enhanced by the elimination of billboards. The ordinance bears a reasonable relationship to aesthetic considerations and is a direct approach to solving the problems created by the billboards.

Many courts have rejected the argument that it is unreasonable to prohibit billboards in commercial and industrial areas of little, if any, natural beauty. *E. B. Elliott Advertising Co.* v. *Metropolitan Dade County*, 425 F.2d 1141 (5th Cir. 1970); *John Donnelly & Sons, Inc.* v. *Outdoor Advertising Board*, 339 N.E.2d 709 (Mass. 1975); *John Donnelly & Sons* v. *Campbell*, 639 F.2d 6 (1st Cir. 1980); *Metromedia Inc.* v. *City of San Diego*, 610 P.2d 407 (Cal. 1980), rev. in part 453 U.S. 490 (1981) and *Metromedia, Inc.* v. *City of San Diego*, 453 U.S. 490 (1981).

We affirm the granting of summary judgment in favor of the city and we affirm the denial of summary judgment in favor of appellant.

The appellant next contends that the chancellor erred in not finding that the sign ordinance and zoning ordinances in their amortization provisions amounted to a public taking of private property in violation of Art. 2 § 22, of the Constitution of Arkansas.

In two recent cases we held a similar amortization provision, as applied, was not a public taking of private property without just compensation. In fact, those cases dealt with the same ordinance, No. 1893, before the amendment. *City of Fayetteville* v. *McIlroy Bank & Trust Co. et al*, 278 Ark. 500, 647 S.W.2d 439 (1983); *Hatfield* v. *City of Fayetteville*, 278 Ark. 544, 647 S.W.2d 450 (1983); *see also* Gitelman, *Signs of the Times in Arkansas*, 1983 Ark. Law Notes 91.

The test to be used in determining whether an amortization requirement is constitutional is the test of reasonableness. *City of Fayetteville* v. *McIlroy Bank & Trust Co., supra.*

Appellant's sixty billboards were constructed from twelve to twenty-four years ago at a cost of $500 to $1,000 per sign. On the facts of this case the four year amortization period was fair. In addition, this litigation has prolonged appellant's signs by another six years.

Appellant additionally contends that, aside from the loss of its billboards, the ordinances constitute a public taking because they may render its business, as heretofore conducted, unprofitable. The argument is not convincing. There is no reason to treat the loss of a profit generated by a competitive monopoly on nonconforming billboards any differently than we treat the loss of the asset. The principle of amortization rests on the reasonable exercise of the police power, and the financial detriment imposed upon a property owner by the reasonable exercise of police power does not constitute the taking of private property within the inhibition of the constitution.

Appellant's final point is that the Arkansas Highway Beautification Act, Ark. Stat. Ann. § 76-2501, et seq., precludes the city from requiring the uncompensated removal of its billboards which are adjacent to federal aid highways. The act was adopted to provide effective control of outdoor advertising within 660 feet of federal aid highways and to conform with the Federal Highway Beautification Act of 1975, as amended, 23 U.S.C. § 131. A 1981 amendment to the Arkansas act provides that no municipality shall remove any outdoor advertising without paying just compensation. Ark. Stat. Ann. § 76-2508. Appellant contends that the city ordinances allow the taking of its billboards without paying just compensation and therefore they are in contravention of the state law. It concludes that such contraventions violate Art. 12 § 4 of the Constitution of Arkansas: "No municipal corporation shall be authorized to pass any law contrary to the general laws of the state . . . ."

However, long before the 1981 amendment to the Arkansas act became effective, the municipal ordinances had already mandated that appellant's signs be altered or removed. The amortized life of the signs had ended on January 19, 1977. Appellant would have us apply the 1981 amend-

ment retroactively in order to give new life to its signs. Like the Supreme Court of Washington, we decline to retroactively apply such a provision. *Ackerley Communication* v. *City of Seattle*, 602 P.2d 1177 at 1186 (Wash. 1979). Without retroactive application of the act, the ordinances are not in contravention of state law.

Affirmed.

HICKMAN, J., concurs, still maintaining view expressed in *City of Fayetteville* v. *S & H, Inc.*, 261 Ark. 148, 547 S.W.2d 94 (1977).

ADKISSON, C.J., HOLT and PURTLE, JJ., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. It is my view that the amortization provisions of the sign and zone ordinances constitute a public taking of private property in violation of Ark. Const. art. 1, § 22.

A four year amortization period for a sign constructed of concrete or steel seems unreasonable. The anticipated useful life at the time of construction would clearly be in excess of four years as evidenced by the fact that all of the sixty signs are from twelve to twenty-four years old.

I would also disagree with the majority in their holding that the cost of the sign, standing alone, is sufficient evidence of its value.

Further, I cannot agree with the majority's suggestion that the fact that this case has been in litigation for some years has some effect on the fair market value of the signs.

PURTLE, J., joins in this dissent.

FRANK HOLT, Justice, dissenting. I would reverse based upon the reasons expressed in my dissent in *City of Fayetteville* v. *McIlroy Bank & Trust Co. et al*, 278 Ark. 500, 647 S.W.2d 439 (1983).

PURTLE, J., joins in this dissent.