**NAEGELE OUTDOOR ADVERTISING, INC., d/b/a Naegele Outdoor Advertising Company of Raleigh–Durham, Plaintiff–Appellant,**

v.

**CITY OF DURHAM, Defendant–Appellee,**

**The Outdoor Advertising Association of America, Inc. (OAAA); North Carolina Restaurant Association, Amici Curiae.**

No. 87–1599.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1988.

Decided April 15, 1988.

Andrew Lewis Frey (Kenneth S. Geller, Mark W. Ryan, Patricia A. McCoy, Mayer, Brown & Platt, John McNeill Smith, Wil-

liam S. Byassee, Smith, Helms, Mulliss & Moore, on brief), for plaintiff-appellant.

Brenda M. Foreman (O. William Faison, Faison, Brown, Fletcher & Brough, on brief), for defendant-appellee.

(Eric M. Rubin, Walter E. Diercks, Steven J. Stone, Rubin, Winston & Diercks, on brief), for amicus curiae Outdoor Advertising Ass'n of American, Inc. in support of plaintiff-appellant.

Thomas W. Steed, Jr., Moore & Van Allen, on brief, for amicus curiae North Carolina Restaurant Ass'n in support of plaintiff-appellant.

Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Naegele, a major outdoor advertising company, seeks to have a billboard ordinance adopted by the city of Durham invalidated as violative of Naegele's first and fifth amendment rights, applicable to the states through the fourteenth amendment. It also seeks damages for injuries it claims it has already suffered. The district court granted summary judgment in favor of the city. We affirm the district court's disposition of the first amendment issue, vacate the entry of summary judgment on the fifth amendment "taking" issue, and remand the case for further proceedings.

## I

In 1984 Durham adopted a billboard ordinance which, as amended in 1985, prohibits all commercial, off-premise advertising signs except alongside interstate or federally-aided primary highways. The ordinance permits the continuing display of noncommercial advertising signs, paid or unpaid, but prohibits altogether the construction of any new off-premise outdoor advertising structures. The ordinance provides a delay or amortization period of five and one-half years before nonconforming signs will be prohibited, a deadline falling on March 4, 1990. Naegele owns thousands of signs in several states and 137 in Durham. Of these, 85 billboards carrying a total of 131 advertising "faces" will not be permitted to display commercial advertising after the expiration of the amortization period.

## II

The principal first amendment challenge which Naegele raises on appeal is that the Durham ordinance does not in fact advance its avowed goals of traffic safety and aesthetics. Naegele tendered proof that the ordinance would not improve traffic safety. It also argued that, because the affected billboards are all located in industrial or heavy commercial areas, the aesthetic justification is untenable in this instance. Naegele contends that since there are genuine issues of material fact on the question whether the ordinance furthers any governmental interest, the validity of the restriction on first amendment expression cannot be decided by summary judgment.

In *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 503–16, 101 S.Ct. 2882, 2890–97, 69 L.Ed.2d 800 (1981), a plurality of the court recognized that an ordinance prohibiting off-premise commercial billboard advertising would not have offended the first amendment if it had not preferred commercial over noncommercial advertising. Legitimacy of such an ordinance was predicated on the city's interest in improving traffic safety and the appearance of the city. Relying on that case, we have affirmed summary judgments upholding against first amendment challenge the constitutionality of ordinances prohibiting off-premise commercial billboards. *See Georgia Outdoor Advertising, Inc. v. Waynesville*, 833 F.2d 43 (4th Cir.1987), and *Major Media of the Southeast v. Raleigh*, 792 F.2d 1269 (4th Cir.1986). The Durham ordinance avoids the preference of commercial over noncommercial speech that invalidated the *San Diego* ordinance and is substantially similar to the ordinances considered in *Raleigh* and *Waynesville*.

■ While the evidence regarding traffic safety offered by Durham is far from conclusive, we noted in *Waynesville* that

"aesthetics alone is a sufficient justification" for this type of police power regulation. *Waynesville*, 833 F.2d at 46; *accord Modjeska Sign Studios, Inc. v. Berle*, 43 N.Y.2d 468, 402 N.Y.S.2d 359, 373 N.E.2d 255 (1977), *appeal dismissed*, 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); *Suffolk Outdoor Advertising Co. v. Hulse*, 43 N.Y. 2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977), *appeal dismissed*, 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978). Contrary to Naegele's contention, the location of the billboard in commercial and industrial areas does not preclude the city from relying on aesthetics to justify its exercise of police power. The San Diego ordinance banned billboards in similar areas. *See* 453 U.S. at 531, 101 S.Ct. at 2904 (Brennan, J., concurring in the judgment). Nevertheless, the plurality found this to be no impediment to its validity.

In sum, we find no principled distinction between the Durham ordinance and those ordinances which have been found not to violate the rights of sign owners secured by the first amendment. The district court properly granted summary judgment in favor of the city on Naegele's claim that the ordinance abridged its right of free speech in violation of the first and fourteenth amendments.

### III

The fifth amendment provides in part, "nor shall private property be taken for public use, without just compensation." The fourteenth amendment applies this restriction to the states. *See Chicago, Burlington and Quincy Railroad Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Naegele charges that the district court erred in holding as a matter of law that the Durham ordinance does not take its property in violation of the takings clause.

Naegele, the city, and the district court have assumed that the claim of unconstitutional taking is mature. The Supreme Court, however, has cautioned against premature decision of these claims—most re-

cently in *Pennell v. San Jose*, —— U.S. ——, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988):

> Given the "essentially ad hoc, factual inquir[y]" involved in the takings analysis, ... we have found it particularly important in takings cases to adhere to our admonition that "the constitutionality of statutes ought not to be decided except in an actual factual setting that makes such a decision necessary."

In *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court held that a claim by a land developer that a county unconstitutionally took its property through the enactment of a zoning ordinance was premature. The Court pointed out that the developer had not sought a variance nor utilized state procedures for obtaining just compensation. The Court stated:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.... Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "'reasonable, certain and adequate provision for obtaining compensation'" exist at the time of the taking.... If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government for a taking."

473 U.S. at 194–95, 105 S.Ct. at 3121 (citations omitted).

The parties' assumption that Naegele's taking claim is mature may be well founded. As the district court pointed out in another context, the North Carolina Court of Appeals has held that a town's rezoning power authorizes enactment of a sign ordinance similar to Durham's, and the North Carolina Supreme Court has held amortization to be appropriate for nonconforming uses. *See R.O. Givens, Inc. v. Town of Nags Head*, 58 N.C.App. 697, 294 S.E.2d 388, *cert. denied*, 307 N.C. 127, 297 S.E.2d 400 (1982); *State v. Joyner*, 286 N.C. 366,

211 S.E.2d 320, *appeal dismissed,* 422 U.S. 1002, 95 S.Ct. 2618, 45 L.Ed.2d 666 (1975). Therefore, it is possible that it would be futile for Naegele to institute an inverse condemnation suit to recover compensation. Furthermore, the city does not contend that there is any realistic likelihood that Naegele would be granted a variance.

Nevertheless, in view of the Supreme Court's admonition, on remand the district court should instruct the parties to address the question of prematurity, and the court should state its findings and conclusions on this issue. The court should proceed to try the merits of the claim only if it is mature.

### IV

■ Naegele predicates its claim of unconstitutional taking primarily on its proffer of the following evidence. Naegele rents on a "showing" basis, an industry practice of renting several billboards throughout the area to carry the same advertising. Prohibition of the directly affected billboards will have an adverse effect on Naegele's integrated business. Naegele's appraiser estimated the market value of the affected 85 billboards to be in excess of $1,500,000. The appraiser estimated additional loss to the integrated business, which Naegele terms severance damage, at $1,300,000, bringing the estimated total loss to about $2.8 million. Naegele also tendered evidence that the land owned or leased for billboard sites had little other commercial use and that moving the billboards is economically impractical. The life of the billboards, according to Naegele, far exceeds the amortization period of five and one-half years allowed by the ordinance.

The city contends that inasmuch as it will not physically seize Naegele's nonconforming signs, Naegele will retain full benefit of them for its own use, reuse, salvage, or other purposes. It emphasizes that Naegele can use its signs for noncommercial advertising or move them to locations where they are permitted. The city asserts that the amortization period makes the ordinance a reasonable exercise of police power.

The district court, finding "little doubt as to how [Durham's] sign ordinance will restrict Naegele's signs," stated that "the only question here is whether the legal effect of Durham's sign ordinance amounts to the taking of private property for public use without just compensation, a question of law which the court can decide." Grounding his conclusion in part on his belief that Naegele could economically transfer banned billboard structures to other locations, and in part on the effect of the amortization period, the district judge found that the ordinance would not impose a substantial loss on Naegele, and hence that it did not amount to a regulatory. taking.

In *Raleigh* we affirmed an entry of summary judgment, holding that an amortization period of five and one-half years was not so unreasonable that a billboard ordinance constituted a taking of the sign company's property. We cautioned, however, that "we do not purport to hold that the owner of a sign can invariably recoup its investment in such a time span." 792 F.2d at 1274.

Recent cases decided by the Supreme Court raise questions about the propriety of summary judgment of takings claims without a fully developed factual record. The record discloses genuine issues of material fact about the effect of the ordinance on Naegele's business. For example, the parties differ about the economics of moving signs, their salvage value, the effect on "sharing" sales, and the overall impact of the ordinance on Naegele. The city suggests that Naegele will benefit from the growth and economic development that the ordinance is intended to foster. Naegele does not subscribe to this prediction. These factual differences cannot be deemed immaterial as a matter of law simply because the city has allowed an amortization period of five and one-half years.

In *Keystone Bituminous Coal Ass'n v. DeBenedictis,* —— U.S. ——, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472 (1987), the Court reiterated that land use regulation can effect a taking if it " 'does not substantially advance legitimate state interests, ... or

denies an owner economically viable use of his land,' " *quoting Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed. 2d 106 (1980).

In part II of this opinion, we concluded that the Durham ordinance advances a legitimate state interest in aesthetics. This conclusion upholds the ordinance against Naegele's claim of taking with respect to the first prong of the test prescribed by the court. The question of taking is therefore narrowed to the second prong—whether the ordinance denies Naegele economically viable use of its property.

The next question in an analysis of Naegele's taking claim is the designation of the appropriate unit of Naegele's property affected by the ordinance. The Court explained in *Keystone,* 107 S.Ct. at 1248, the importance of this inquiry:

> Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property "whose value is to furnish the denominator of the fraction."

*Keystone* involved a facial challenge to a statute that prohibited coal mining that causes subsidence damage to pre-existing public buildings, dwellings, and cemeteries. The coal companies contended that the state appropriated some 27 million tons of coal that must be left in place to avoid subsidence and that the state also had taken a separate interest in their property, the support estate. 107 S.Ct. at 1249. The Court rejected this argument. It held that the 27 million tons of coal and the support estate did not constitute a separate segment of property for taking purposes. Quoting from *Penn Central Transportation Co. v. New York,* 438 U.S. 104, 130–31, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978), the Court explained:

> " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has ef-

fected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with rights *in the parcel as a whole*—here the city tax block designated as the 'landmark site.' "

107 S.Ct. at 1248.

Guided by these precepts, the district court, on remand, must determine the appropriate unit of Naegele's property after an evidentiary hearing on this issue. Clearly the unit is not composed of the affected billboards, which, like the coal pillars in *Keystone,* do not constitute a separate segment of property for taking purposes. *See* 107 S.Ct. at 1249.

Naegele argues that the prohibition against some of its signs will lessen the value of the remaining signs because of its "sharing" method of marketing—that is, selling advertising for the same product on numerous billboards. If the sharing market is confined to the triangle area of North Carolina, it would appear that the appropriate unit of property is Naegele's business in this area. There is some indication in the record that a substantial part of Naegele's business is cigarette advertising. If Naegele advertises cigarettes or any other product through sharing contracts that are nationwide or in other broadly defined markets, the unit of its affected property may be larger than in the business it conducts in the triangle area.

The third step in the analysis of Naegele's claim is to determine whether the ordinance denies Naegele economically viable use of the appropriate unit of its property by considering the following factors identified in *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659: (1) The "economic impact of the regulation on the claimant," (2) the "extent to which the regulation has interfered with distinct investment-backed expectations," (3) the "character of the governmental action."

The dispute about the impact of the ordinance on Naegele's business requires a full evidentiary hearing. Resolution of the dispute by plenary hearing rather than by summary judgment is particularly important in cases involving claims of regulatory

taking. In a case decided after the district court entered judgment, the Supreme Court stated: "Determination of the question whether a governmental property regulation amounts to a 'taking' requires ad hoc factual inquiries ..." *Hodel v. Irving,* — U.S. ——, 107 S.Ct. 2076, 2077, 95 L.Ed.2d 668 (1987). The inquiries are directed to the factors identified in *Penn Central,* which are quoted in the preceding paragraph. Drawing on its precedents, the Court emphasized the necessity of factual inquiry. In *Keystone,* 107 S.Ct. at 1247, it reiterated: " 'These "ad hoc factual inquiries" must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances.' "

The allowance of an amortization period of five and one-half years does not establish the validity of the ordinance as a matter of law. Nor is it irrelevant, as Naegele contends. It is one of the facts that the district court should consider in defining the character of governmental action, which is the third factor mentioned in *Penn Central.* With reference to this factor the Court explained that a " 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government ... than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. at 124, 98 S.Ct. at 2659 (citation omitted). The Court amplified the inquiry concerning governmental action in *Agins,* 447 U.S. at 260–61, 100 S.Ct. at 2141:

> The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest. Although no precise rule determines when property has

been taken, ... the question necessarily requires a weighing of private and public interests. (citations omitted).

A majority of courts that have considered amortization periods of various lengths have approved them as a means of enabling an owner to recoup or minimize his loss. *See* Model Land Development Code, Art. 4 and commentary, pp. 146–50 (1975). In *Modjeska Sign Studios, Inc. v. Berle,* 43 N.Y.2d 468, 402 N.Y.S.2d 359, 366–67, 373 N.E.2d 255, 261–62 (1977), *appeal dismissed,* 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978), perhaps the leading case on this issue, the court considered a six and one-half years' amortization period for removal of nonconforming billboards. The court recognized that the reasonableness of the amortization period could not be decided on summary judgment, and it remanded the case for an evidentiary hearing to determine whether the loss that the owner of the billboards suffered was substantial. 402 N.Y.S.2d at 367, 373 N.E.2d at 262.*

Contrary to Naegele's suggestion, *First English Evangelical Lutheran Church v. County of Los Angeles,* — U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), *Hodel v. Irving,* — U.S. ——, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987), and *Nollan v. California Coastal Commission,* — U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), are distinguishable because they address significantly different taking issues. *First English* holds that a temporary regulatory taking that has already denied an owner all use of its property requires just compensation for the period during which the taking was effective. *See* 107 S.Ct. at 2389. *Hodel* held a statute unconstitutional because it escheated all of claimants' fractional interest in Indian allotments, abolishing devise and descent of the interests, without compensation. 107 S.Ct. at 2084. It is apparent, however, that the Durham ordinance does not deny Naegele all use of its

---

\* Examination of the jurisdictional statement filed in the Supreme Court indicates that the Court's dismissal "for want of substantial federal question," 439 U.S. 809, 99 S.Ct. 66, is not precedent for deciding the issue of the constitutionality of an amortization period in lieu of compensation.

The dismissal simply affirmed the judgment remanding the case without affirming the reasoning of the state court. *See Mandel v. Bradley,* 432 U.S. 173, 176–77, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977).

property. Instead, like the statute upheld in *Keystone*, 107 S.Ct. 1232, it directly affects only a part of the property.

In *Nollan* the Court invalidated a requirement that the owner of beachfront property grant a public easement in order to obtain a permit to rebuild a dwelling on his lot. The condition requiring an easement violated the taking clause because it did not serve a governmental purpose related to the permit to rebuild. 107 S.Ct. at 3146–50. Here, in contrast, the prohibition of certain billboard advertising is directly related to the city's interest in aesthetics.

## V

In summary, we hold that Durham's ordinance advances the legitimate city interest in aesthetics. The ordinance does not abridge Naegele's rights that are secured by the first amendment. We affirm the district court's judgment pertaining to these aspects of the case.

On remand the district court can proceed directly to the taking claim, determining first whether it is premature. If mature, the legitimacy of the taking depends on whether the ordinance denies Naegele "economically viable use" of an appropriate unit of its property. *See Keystone*, 107 S.Ct. at 1248–49. The appropriate unit is that one which is substantially affected by the ordinance. Its identification depends largely on the scope of Naegele's sharing contracts.

The district court should then canvass the facts that are necessary to address the inquiries identified in *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659. The court should make findings pertaining to every aspect of Naegele's business that will be affected by the ordinance, including the number of billboards that can be economically used for noncommercial advertising, the number that are economically useless, the terms of Naegele's leases for billboard locations, the land Naegele owns for locations and whether it has any other economic use, the cost of billboards that cannot be used, the depreciation taken on these billboards and their actual life expectancy, the income expected during the grace period, the salvage value of billboards that cannot be used, the loss of sharing revenue, the percentage of affected signs compared to the remaining signs in Naegele's business unit, the relative value of affected and remaining signs, whether the amortization period is reasonable, and any other evidence presented by the parties that the court deems relevant.

The task we ask the district court to undertake is difficult. The Court recently summarized its importance as well as its complexity:

> A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes. As Justice Holmes emphasized ... "this is a question of degree—and therefore cannot be disposed of by general propositions." ... To this day we have no "set formula to determine where regulation ends and taking begins." ... Instead, we rely "as much [on] the exercise of judgment as [on] the application of logic." ... Our cases have accordingly "examined the 'taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action—that have particular significance."

*MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348–49, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (citations omitted).

The judgment of the district court is affirmed in part, vacated in part, and the case is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs.