**GEORGIA OUTDOOR ADVERTISING, INC., d/b/a Allison Outdoor Advertising, Inc., Plaintiff,**

v.

**The CITY OF WAYNESVILLE, a North Carolina Corporation, Defendant.**

No. A–C–86–52.

United States District Court, W.D. North Carolina, Asheville Division.

July 5, 1988.

Albert Lee Sneed, Jr., Asheville, N.C., (Michelle Rippon, Van Winkle, Buck, Wall, Starnes & Davis, Asheville, N.C., on brief), for plaintiff.

Katherine Slaughter McNett, Southern Environmental Law Center, Rodney Miller Ligon, Jr. (Carlyle, Sandridge & Rice, Winston Salem, N.C., Frank G. Queen, Michael Bonfoey, Smith, Bonfoey & Queen, Waynesville, N.C., on brief), for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

Plaintiff brought this action to have an ordinance of the City of Waynesville outlawing all billboards within the city enjoined as unconstitutional.

United States District Court Judge David B. Sentelle granted Defendant's Motion for summary judgment. The Court of Appeals for the Fourth Circuit affirmed Judge Sentelle's decision in part and remanded the case for further proceedings. *Georgia Outdoor Advertising, Inc. v. City of Waynesville*, 833 F.2d 43 (4th Cir.1987).

The facts are fully set forth in the Fourth Circuit's opinion and will not be repeated here, except as may be necessary to understand this decision.

The Plaintiff appealed the District Court's decision, attacking the ordinance on four basic fronts:

(1) the ordinance violates the First Amendment free speech rights of the Plaintiff and the Plaintiff's clients by outlawing a protected form of expression, commercial off-premise advertising, (2) the stated objectives of the ordinance (traffic safety and aesthetics) are neither rationally related to the ordinance nor adequate to support its constitutionality; (3) the ordinance violates due process of law by causing the total destruction of plaintiff's business; and (4) the ordinance constitutes a taking of private property for public use without just compensation.

*Waynesville*, 833 F.2d at 44.

The Fourth Circuit shot down Plaintiff on all fronts except number (4) above. The appellate court held that the district court erred in refusing to address Plaintiff's claim that the ordinance effects a taking without just compensation as prohibited by the Fifth and Fourteenth Amendments and remanded the matter to the district court for consideration of that claim, upon the merits of which the appellate court did not express an opinion. In a footnote the court also said:

The district court did not address, and neither do we, the state law questions of state due process and the authority of Waynesville to enact the ordinance in question. On remand, those questions should be considered, if appropriate.

833 F.2d at 47, n. 8.

On March 10, 1988, Plaintiff filed "Renewal of Cross–Motion for Summary Judgment or Partial Summary Judgment," supported by affidavits and briefs. Defendant, on April 22, 1988, filed "Renewal of Defendant's Motion for Summary Judgment" and Supplemental Brief on May 10, 1988.

The motions for summary judgment came on for hearing before the undersigned on May 2, 1988 in Asheville, North Carolina. Plaintiff was represented by Albert L. Sneed, Jr., Esq., and Michelle Rippon, Esq. Defendant was represented by Katherine S. McNett, Esq., Rodney M. Ligon, Esq. and Frank Queen, Esq.

## DISCUSSION

This matter is again before the Court on motion for summary judgment by both parties.

It is axiomatic that a motion for summary judgment may be granted by the Court "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

The issue before this Court as defined by the Fourth Circuit in *Waynesville* is this:

Is this zoning ordinance so onerous as to require just compensation under the Fifth and Fourteenth Amendments?

The answer to this question under the facts of this case is "yes."

The pertinent part of the Fifth Amendment involved in this action states: "... nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment applies this restriction to the states.

The Court must first decide if the question of unconstitutional taking is mature. In *Naegele Outdoor Advertising, Inc. v. City of Durham*, 844 F.2d 172, 175 (4th Cir.1988), the court said:

Recent cases decided by the Supreme Court raise questions about the propriety of summary judgment of takings claims without a fully developed factual record.

The Court in this case has a fully-developed factual record, and the case is ripe for decision.

## FINDINGS OF FACT

Based upon affidavits, answers to interrogatories, and depositions filed in this matter, the Court makes the following finding of material facts, as to which there is no genuine issue:

(1) Defendant's sign ordinance, adopted November 26, 1985, Ordinance No. 24–85, permits signs only as an accessory use to a business. It therefore implicitly prohibits all off-premises signs. It requires discontinuance within four years of all signs that do not conform to the ordinance. The ordinance does not contain any grandfather clause. The four-year grace period is provided to allow sign owners adequate time to amortize their investment.

(2) Approximately 40 structures in the Waynesville zoning jurisdiction are off-premises signs and will be prohibited by Defendant's ordinance. Eighteen of these off-premises structures are owned by Plaintiff and consist of 45 sign faces.

(3) *All* of Plaintiff's signs within the City of Waynesville and for a distance of one mile outside of the town are to be removed within four years, without cash compensation to Plaintiff. The ordinance eventually will prevent Plaintiff and other billboard companies from operating within the town's zoning jurisdiction.

(4) The total construction and lease costs of Plaintiff's signs, according to Defendant, is $125,253. According to Plaintiff, the cost is in excess of $300,-

000. In any event, the cost of construction was substantial and the signs obviously have a substantial monetary value. The removal of the signs would certainly cause Plaintiff to incur an expense.

(5) According to Defendant, the income from Plaintiff's signs during the four-year amortization period will be $438,816; total income from the signs since construction will be $1,050,354.

(6) Plaintiff's answers to interrogatories indicate that three of the signs involved were constructed in the late sixties with the remainder having been constructed in the seventies and early eighties.

(7) Some of Plaintiff's leases may require Plaintiff to continue to pay rental on property beyond the end of the amortization term provided in the ordinance.

(8) Plaintiff's leases provide in general that Plaintiff may continue to remain on the leased premises for the specified term with the right to renew on like terms from year to year so long as the current owner owns the property and does not develop the property in some other fashion inconsistent with the use of the property by Plaintiff. The earliest lease appears to be dated February 1, 1968. Other leases are dated between that date and what appears to be the latest leases dated March 28, 1986.

(9) The average occupancy rate of Plaintiff's signs in Waynesville is 85%.

(10) The only business conducted by Plaintiff is the erection and use of signs it owns to advertise the businesses, products and messages of others.

(11) There presently are from 1500–2000 signs in Waynesville, of which there are 40 off-premises structures, 18 owned by Plaintiff. On those 18 structures there are 45 sign faces owned by Plaintiff. Thus, after the 40 off-premises structures, with approximately 90 sign faces, are removed, there would be at least 1400 signs remaining in Waynesville.

(12) The average economic life of a sign is at least 27 years; signs may last from thirty to fifty years.

(13) No billboard companies will be allowed to operate within the town's zoning jurisdiction after November 26, 1989.

(14) The stated purposes of Waynesville's ordinance are to promote public health, prosperity, safety, and welfare, and to preserve and improve the appearance of the town.

(15) Defendant has not shown that public health, prosperity, safety, and welfare are the purpose or result of the ban on billboards. On the contrary, Defendant has not submitted any evidence as to the purpose for the ban, except a desire by the governing authority to promote what it perceives as an improvement of the appearance of the town.

(16) As pointed out in *Waynesville*, 833 F.2d at 44–45, by the Fourth Circuit Court of Appeals:

> The ordinance here is far-reaching, and there is little doubt that it will ultimately destroy plaintiff's business within the City of Waynesville's zoning jurisdiction.

## AESTHETICS

As the Court has found, this case involves the advancement of aesthetics only, which on appeal the Fourth Circuit held to be a legitimate state interest. *Waynesville*, 833 F.2d at 46:

> In any event, we note that aesthetics alone is a sufficient justification for an exercise of the police power. See *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984); *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). It requires neither elaboration nor citation to say that an ordinance *regulating* [emphasis added] billboards is likely to advance the objective of enhancing the beauty of a city, and that no less intru-

sive method would adequately protect the city's interest.

See *Durham*, 844 F.2d at 178.

## DESTRUCTION OF BUSINESS

The Fourth Circuit has also decided this issue, when it stated in *Waynesville*, 833 F.2d at 46:

> Plaintiff's contention that due process prevents the government from enacting laws having the effect of completely destroying an ongoing business is likewise without merit. As far back as *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887), the Court has stated that an exercise of the police power is not unconstitutional merely because it completely destroys some businesses, whether directly or indirectly. In *Mugler*, Kansas' prohibition of alcohol rendered the plaintiff's brewery useless. The Court, however, noted no incompatibility between the requirements of due process and "the principle, equally vital ..., that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." *Id.* at 665, 8 S.Ct. at 299. Since there is no contention that the law in this case is or will be arbitrarily applied, the fact that the Waynesville billboard ordinance will eventually destroy plaintiff's business does not make it constitutionally invalid.

Therefore, Plaintiff's complaint that the ordinance destroys its business, and that this fact *alone* renders the ordinance unconstitutional, is without merit.

## AMORTIZATION

Courts generally have held that an amortization clause may sufficiently mitigate the effect of the challenged ordinance to protect it from a takings clause attack, if the clause is reasonable in the light of the nature of the business of the property owner, the improvements erected on the land, the character of the neighborhood, and the detriment caused the property owner. *Major Media of the Southeast v. City of Raleigh*, 792 F.2d 1269, 1273 (4th Cir.1986), cert. denied, — U.S. —, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). However, the inclu-sion of an amortization period of four years does not render the ordinance valid as a matter of law. See *Durham*, 844 F.2d at 177.

## LEASEHOLD

The leasehold interest by Plaintiff could be terminated by either party for a variety of reasons and is for all practical purposes tenancy at will. In *Almota Farmers Elevator and Warehouse Co. v. United States*, 409 U.S. 470, 473, 93 S.Ct. 791, 794, 35 L.Ed.2d 1 (1973), the question presented to the court was:

> "Whether, upon condemnation of a leasehold, a lessee with no right of renewal is entitled to receive as compensation the market value of its improvements without regard to the remaining term of its lease, because of the expectancy that the lease would have been renewed."

The court said:

> "The Fifth Amendment provides that private property shall not be taken for public use without "just compensation." And 'just compensation' means the full monetary equivalence of the property taken. The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." *United States v. Reynolds*, 397 U.S. 14, 16 [90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970)] (footnotes omitted). See also *United States v. Miller*, 317 U.S. 369, 373, [63 S.Ct. 276, 279, 87 L.Ed. 336 (1943)]. To determine such monetary equivalence, the court clearly established the concept of "market value": the owner is entitled to the fair market value of his property at the time of taking.

409 U.S. 473–74, 93 S.Ct. at 794 [citations omitted].

"Just compensation" is measured by what the plaintiff's property was worth when the ordinance was adopted. On this record it is more likely that Plaintiff's leases would be renewed and Plaintiff would be entitled to continue beyond 1989 to lease the property where its signs are located than that it would not be able to renew the leases.

The constitutional requirement of compensation derives as much content from the basic equitable principles of fairness, *United States v. Commodities Trading Corp.*, 339 U.S. 121, 124 [70 S.Ct. 547, 549, 94 L.Ed. 707] (1950) as it does from technical concepts of property law. *United States v. Fuller*, 409 U.S. 488, 490, 93 S.Ct. 801, 803, 35 L.Ed.2d 16 (1973).

Therefore, the fact that Plaintiff's leases could be terminated does not preclude Plaintiff from recovering just compensation for taking its property.

THE FIFTH AMENDMENT

The City of Waynesville, through its elected representatives, has determined that Waynesville would be a more beautiful town by removing billboards which have been allowed by its governing body for over 50 years. If the citizens, through their governing body, have decided now that billboards detract from the beauty of their City, then that strong public desire to remove what those citizens perceive to be an eyesore in their City may be accomplished by zoning. But, those citizens should be required to pay for their desire for a more aesthetically pleasing town by paying the owner of the property for his loss. That is the requirement of fairness and justice as embodied in the Fifth Amendment requirement of payment of just compensation when property is taken by the government.

As Justice Holmes said in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), "[A] strong public desire to improve is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

In this case, the Court is of the opinion that this "zoning" ordinance has gone too far. It has destroyed Plaintiff's business in Waynesville. Again, if that is what the people of Waynesville want, the complete banning of billboards in their City, that is well and good; but the citizens of Waynesville, not Plaintiff which has long and legally operated in the City, should pay for the destruction of Plaintiff's business. This is more than regulation; it is taking.

The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. at 415, 43 S.Ct. at 160.

Both *Raleigh* and *Durham* were cases which involved regulation, *i.e.*, restrictions as to size and location of signs. Waynesville has banned all billboards without regard to the neighborhood where they are located (including industrial districts). It has not simply regulated the size or location of the billboards. Waynesville has ignored completely the question of reasonableness versus the loss suffered by the owners of all off-premises billboards.

As was stated in *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986):

A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes. As Justice Holmes emphasized throughout his opinion for the Court in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. at 416 [43 S.Ct. at 160], "this is a question of degree—and therefore cannot be disposed of by general propositions." ... To this day we have no "set formula to determine where regulation ends and taking begins." *Goldblatt v. Hempstead*, 369 U.S. 590, 594 [82 S.Ct. 987, 990, 8 L.Ed.2d 130] (1962).

And earlier:

The rubric of "zoning" has not yet sufficed to avoid the well established proposition that the Fifth Amendment bars the "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554] (1960).

*Penn Central Transportation Co. v. New York*, 438 U.S. 104, 140, 98 S.Ct. 2646, 2667, 57 L.Ed.2d 631 (1978).

In all fairness it would seem to this Court that completely destroying Plaintiff's business to effect some perceived beautifi-

**458**

cation of Waynesville by requiring Plaintiff to remove *all* of its signs without any regard to location, when there are still approximately 1400 signs in the City, and then not having any procedure for compensating Plaintiff for its loss, other than through amortization, is merely "reducing the dog's pain by cutting off his tail an inch at a time," *State v. Joyner*, 286 N.C. 366, 276, 211 S.E.2d 320, 326 (1975) (Lake, J., dissenting). That is just going too far, and is a taking without just compensation.

While the typical taking occurs when the Government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings.

> It would be a very curious and unsatisfactory result if ... it shall be held that if government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can in effect subject it to total destruction without making any compensation, because, in the narrowest sense of that word it is not taken for the public use.

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* — U.S. —, —, 107 S.Ct. 2378, 2387, 96 L.Ed.2d 250 (1987).

The Fifth Amendment does not require that municipalities endure billboards forever with no power to regulate them to beautify their city. The City, constitutionally, probably could:

(1) Prohibit construction of billboards in the future for aesthetic reasons;

(2) Reasonably regulate the size of existing signs, in some zoning classifications;

(3) Reasonably reduce the number of zoning classifications where existing billboards are permitted;

(4) Provide for a reasonable amortization period before any sign must be removed from zoning classifications, without cash compensation if the regulation is reasonable, and does not eliminate all off-premises signs, but merely restricts their size and spacing; or

(5) Ban *all* existing billboards without regard to location, resulting in a taking of the property, *if* the ordinance provides for just compensation. Government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *First English,* — U.S. at —, 107 S.Ct. at 2381.

■ The Fifth Amendment requires only that, when the city takes property for public purposes, it give the owner just compensation for the loss.

In summary, this Court must weigh the public interest in having a town without off-premises signs (billboards) against the burden placed on Plaintiff, by *this ordinance*, to bear the economic loss imposed on Plaintiff by the exercise of state power. The Court is of the opinion that under this ordinance the burden of the loss should be placed on the public which wants a billboard-free town, not on the owner of the property. Defendant's ordinance violates the Fifth Amendment as applied to the States by the Fourteenth Amendment in that it takes all of Plaintiff's property without just compensation and is therefore unconstitutional as written.

STATUTORY AUTHORITY

■ The Court has considered whether the City of Waynesville has the authority to enact the ordinance in question. The City's authority is derived from North Carolina General Statutes Section 160A–381 which provides in pertinent part:

> ... any city may regulate and restrict the height, number of stores and size of buildings and other structures, ... and the location and use of buildings, structures and land for trade, industry, residence or other purposes....

Thus, under the North Carolina statute, the City has the power to regulate the use of land, even to the extent of prohibiting billboards in the entire City. However, to eliminate the existing billboards without cash compensation to the owners is tantamount to a taking without just compensa-

tion in violation of the Fifth and Four-teenth Amendments to the United States Constitution, as discussed heretofore.

## CONCLUSION

A judgment granting Plaintiff's Motion for summary judgment and injunction against the enforcement of Ordinance No. 24–85 as to discontinuance, without just compensation, of all off-premises signs that do not conform to the ordinance will be filed simultaneously herewith.