**GEORGIA OUTDOOR ADVERTISING, INC., d/b/a Allison Outdoor Advertising, Inc., a Georgia Corporation, Plaintiff–Appellee,**

v.

**The CITY OF WAYNESVILLE, a North Carolina Municipal Corporation, Defendant–Appellant.**

No. 89–1005.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1989.

Decided April 11, 1990.

Katherine E. Slaughter (argued), Deborah M. Wassenaar, Southern Environmental Law Center, Charlottesville, Va., Roddey M. Ligon, Jr., Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., and Frank G. Queen, Smith, Bonfoey & Queen, Waynesville, N.C. (on brief), for defendant-appellant.

Albert Lee Sneed, Jr. (argued), Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, N.C., and Michelle Rippon, Van Winkle, Buck, Wall, Starnes & Davis, P.A. (on brief), Asheville, N.C., for plaintiff-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

We address for the second time the constitutionality of a Waynesville, North Carolina, ordinance that could effectively prohibit all off-premise outdoor advertising signs in the city.

The district court initially granted summary judgment for Waynesville, determining that the ordinance was a proper exercise of the city's police power that did not violate the first amendment or deny plaintiff due process of law. The district court declined, however, to address plaintiff's claim that the ordinance constituted a taking of property without just compensation in violation of the fifth and fourteenth amendments. We affirmed the district court's decision in part and remanded for consideration of the takings claim. *Georgia Outdoor Advertising, Inc. v. City of Waynesville*, 833 F.2d 43 (4th Cir.1987) (*Waynesville I*). On remand, the district court concluded that the ordinance was unconstitutional on its face because it effected a taking of property without just compensation. Accordingly, the district court entered summary judgment for plaintiff and enjoined enforcement of the ordinance. *Georgia Outdoor Advertising, Inc. v. City of Waynesville*, 690 F.Supp. 452 (W.D.N.C. 1988) (*Waynesville II*). We vacate the district court's orders holding the ordinance invalid on its face and enjoining its enforcement, and remand for consideration of whether the ordinance accomplishes an unconstitutional taking as applied to Georgia Outdoor Advertising.

Because the facts are set forth fully in our earlier opinion, we repeat them here only as necessary to add clarity to our decision.

I.

Plaintiff asserted here, both at oral argument and in its brief, that it did not ask the district court to declare the Waynesville ordinance invalid on its face and that it does not read the district court's opinion as doing so. Nevertheless, the complaint is reasonably read to ask for such a finding, and an examination of its opinion and orders reveals that the district court so held.

Although the district court discussed the impact of the ordinance on this particular plaintiff, it concluded that the ordinance "violates the Fifth Amendment as applied to the States by the Fourteenth Amendment in that it takes all of Plaintiff's property without just compensation and is therefore unconstitutional *as written.*" *Waynesville II*, 690 F.Supp. at 458 (emphasis added). Consequently, in its Motion for a New Trial and for Amendment of Judgment, defendant urged the district court "that the Court should amend its judgment invalidating the ordinance and make its order applicable only to Plaintiff." Instead, in its Amended Judgment the district court stated, "Defendant is enjoined from enforcing any part Section 116.10 or Section 116.-12 of Defendant's Ordinance No. 24–85 as to off-premises signs within the Waynesville zoning jurisdiction." Moreover, in the

Order filed simultaneously with its Amended Judgment, the district court reiterated that the ordinance "is therefore unconstitutional *as written*" (emphasis in original order in the district court). Finally, in an apparent attempt to provide some sort of guidance to the city, the district court enumerated five variations of sign ordinances, all of which would be somewhat less intrusive toward companies with existing signs, that the city "constitutionally, probably could [enact]." 690 F.Supp. at 458. It is apparent, therefore, that the district court determined that the " 'mere enactment' " of the ordinance unconstitutionally affected plaintiff's property rights. See *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981).

Before the provisions of a land use ordinance may be declared facially unconstitutional, "it must be said ... that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); see also *Beacon Hill Farm Associates II Limited Partnership v. Loudoun County Bd. of Supervisors,* 875 F.2d 1081, 1083–85 (4th Cir.1989) (recognizing Supreme Court's reluctance to adjudicate constitutionality of land use ordinance as applied prior to its application to specific piece of land and noting heavy burden of persuasion that facial challenges to land use ordinances must carry). Therefore, if one seeks an injunction against the enforcement of a land use ordinance in general, to deny relief a court need only determine "that the ordinance in its general scope and dominant features ... is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them." *Village of Euclid,* 272 U.S. at 397, 47 S.Ct. at 121.

As this court already has determined, the enactment of the ordinance in question was a valid exercise of the city's police power, even if the sole purpose of the ordinance was aesthetics. *Waynesville I,* 833 F.2d at

46. The district court's orders granting summary judgment and enjoining enforcement on the ground that the ordinance is unconstitutional as written are therefore vacated.

## II.

On two previous occasions this court has considered whether a city ordinance that restricted billboards effected an unconstitutional taking of private property without just compensation. In both cases a central issue was the existence in the ordinance of an amortization period. Simply stated, an amortization provision provides a period of time in which a new land use ordinance will not be enforced, during which time a property user either can make a use conform to the ordinance, or, if a user cannot or chooses not to conform, during which a user can recover all or a part of his investment before the use must be discontinued. The Waynesville ordinance here in issue contains an amortization provision of four years.

In *Major Media of the Southeast, Inc. v. City of Raleigh,* 792 F.2d 1269, 1270 (4th Cir.1986), *cert. denied,* 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), we considered a Raleigh ordinance that severely restricted the size of off-premise signs and confined their location to certain industrial zones. The Raleigh ordinance contained a five and one-half year amortization period, after which any existing nonconforming signs had to be removed. Because the plaintiff had not presented sufficient evidence to create a triable issue of fact as to whether the ordinance constituted a taking of its property without just compensation, we affirmed a summary judgment for the city. 792 F.2d at 1274.

In *Naegele Outdoor Advertising, Inc. v. City of Durham,* 844 F.2d 172, 173 (4th Cir.1988), we considered a Durham ordinance that prohibited, after an amortization period of five and one-half years, all commercial, off-premise advertising signs except those adjacent to interstate or federally aided primary highways.[1] We noted in

---

**1.** In both *Raleigh* and *Durham,* as well as in the present case, a North Carolina statute supersed-

*Durham* that recent Supreme Court cases "raise questions about the propriety of summary judgment of takings claims without a fully developed factual record." 844 F.2d at 175; see *Hodel v. Irving,* 481 U.S. 704, 714, 107 S.Ct. 2076, 2082, 95 L.Ed.2d 668 (1987); *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). Because the record presented genuine issues of material fact about the effect of the ordinance on plaintiff's business, we vacated the district court's entry of summary judgment for the city on the takings claim and remanded for further proceedings. *Durham,* 844 F.2d at 175, 178.

Because *Raleigh* affirmed a summary judgment for the city, and because *Durham* vacated a summary judgment for the city and recognized the importance of ad hoc factual findings in evaluating takings claims, Waynesville contends that *Durham* is inconsistent with *Raleigh.* Naturally, Waynesville also contends that *Raleigh* contains the more correct takings analysis. We refuse to read either *Raleigh* or *Durham* in the fashion that the city suggests, however, and we do not believe that *Raleigh* and *Durham* are inconsistent.

■ Although the city apparently reads *Durham* as inaugurating a per se rule that summary judgment is never appropriate for takings claims, we established no such rule. Rather, as noted earlier, in *Durham* we recognized the critical nature of ad hoc factual inquiries in adjudicating claims of regulatory taking and, most importantly, we determined that the record before us disclosed genuine issues of material fact concerning the effect of the ordinance on plaintiff's business. *Durham,* 844 F.2d at 175. By contrast, the record in *Raleigh* did not disclose enough evidence to create a triable issue of fact on the takings claim. *Raleigh,* 792 F.2d at 1274. Thus, while ad hoc factual inquiries are central to a takings analysis, summary judgment still may be appropriate, even if only infrequently, should a particular record reveal that the relevant facts are fully developed and that there is no dispute concerning them.

■ Closely intertwined with the procedural posture of these cases is the issue of amortization. Again, the city would prefer a black-letter rule under which the inclusion in a land use ordinance of an amortization period automatically immunized the ordinance from a takings challenge. Both *Raleigh* and *Durham* make plain, however, that amortization provisions do not have that effect. Although we affirmed the district court's consideration on summary judgment of the amortization provision in *Raleigh,* we carefully stated that "we do not purport to hold that the owner of a sign can invariably recoup its investment in such a time span." *Raleigh,* 792 F.2d at 1274. Similarly, we recognized in *Durham* that "[t]he allowance of an amortization period of five and one-half years does not establish the validity of the ordinance as a matter of law." *Durham,* 844 F.2d at 177.

■ Not only does the presence of an amortization provision fail to validate automatically a land use ordinance, the absence of a provision for compensation does not invariably render such an ordinance an unconstitutional taking. See *Goldblatt v. Hempstead,* 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962). Thus, the often-stated majority rule that "provisions for the amortization of nonconforming uses are valid if they are reasonable," Annotation, *Validity of Provisions for Amortization of Nonconforming Uses,* 22 A.L.R.3d 1134, 1139 (1968), in a sense both overstates and understates the role of amortization. That is, because an ordinance without such a provision may be constitutional, in rare cases even the briefest amortization period would not be unreasonable. Conversely, because an ordinance could accomplish a taking after the expiration of a very long amortization period, in other rare cases an amortization provision would not be reasonable. Therefore, amortization periods cannot be viewed in isolation. Instead, amortization provisions are only "one of the facts that the district court

---

ed the city ordinance as it applied to signs located near interstate or federal aid primary highways. For a more detailed discussion of this issue, see *infra* p. 788.

should consider in defining the character of the government action...." *Durham,* 844 F.2d at 177.

### III.

In addition to clarifying the role of amortization, *Durham* also set out the factual inquiries that are relevant to a takings claim in the context of billboard regulation. As reluctant as we are to remand this case a second time for consideration of the takings issue, we simply cannot discern from the record before us the factual findings that are critical to the resolution of plaintiff's claim.

As *Durham* recognized, in *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 485, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472 (1987) (quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)), the Supreme Court restated the rule that land use regulation can effect a taking if it " 'does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land.' " As was the case in *Durham,* we already have concluded that the ordinance here in issue advances a legitimate state interest, see *Waynesville I,* 833 F.2d at 46, and therefore the crucial inquiry centers on the second prong of the test: whether the ordinance denies Georgia Outdoor Advertising economically viable use of its property. Relying on *Keystone* and *Penn Central Transportation Co. v. New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), *Durham* properly framed the analysis under the second prong of *Keystone.* First, one must designate "the appropriate unit of ... property affected by the ordinance." *Durham,* 844 F.2d at 176. Second, one must

> determine whether the ordinance denies [plaintiff] economically viable use of the appropriate unit of its property by considering the following factors identified in *Penn Central:* (1) The "economic impact of the regulation on the claimant," (2) the "extent to which the regulation has interfered with distinct investment-backed expectations," (3) the "character of the governmental action."

844 F.2d at 176. *Durham* went on to enumerate several factors that the district court should consider in applying the *Penn Central* criteria:

> The court should make findings pertaining to every aspect of Naegele's business that will be affected by the ordinance, including the number of billboards that can be economically used for noncommercial advertising, the number that are economically useless, the terms of Naegele's leases for billboard locations, the land Naegele owns for locations and whether it has any other economic use, the cost of billboards that cannot be used, the depreciation taken on these billboards and their actual life expectancy, the income during the grace period, the salvage value of billboards that cannot be used, the loss of sharing revenue, the percentage of affected signs compared to the remaining signs in Naegele's business unit, the relative value of affected and remaining signs, whether the amortization period is reasonable, and any other evidence presented by the parties that the court deems relevant.

844 F.2d at 178.

Some of the above issues do not appear relevant in this case. For example, the Waynesville ordinance contains no exception for noncommercial speech, and therefore none of plaintiff's billboards can economically be used for noncommercial advertising. Also, if plaintiff owns none of the land on which its signs stand, as it apparently does not, whether the leasehold has other economic use is relevant, and subleasing and assignment should be considered along with whether plaintiff might be obligated to honor its leases after removal of the signs.[2] Finally, if plaintiff's

---

**2.** The district court addressed plaintiff's leases in findings of fact seven and eight, concluding that the leases "may require Plaintiff to continue to pay rental on property beyond the end of the amortization term...." *Waynesville II,* 690 F.Supp. at 455. The court also concluded, however, that plaintiff entered into some of the leases after Waynesville enacted its ordinance. We believe plaintiff cannot rely on any detriment suffered as a result of leases it signed after

contention that its entire business consists only of the Waynesville market is correct, "sharing revenue" may not be a factor. Most of the facts alluded to in *Durham* are relevant, however, and although some of the district court's findings of fact are responsive to *Durham*, several issues remain unresolved.[3]

For example, in its fourth finding of fact the district court listed as the contentions of both sides:

> The total construction and lease costs of Plaintiff's signs, according to Defendant, is $125,253. According to Plaintiff, the cost is in excess of $300,000. In any event, the cost of construction was substantial and the signs obviously have a substantial monetary value. The removal of the signs would certainly cause Plaintiff to incur an expense.[4]

*Waynesville II*, 690 F.Supp. at 454–55. We think this factual finding is rather too imprecise to meet the standard the Supreme Court consistently has emphasized is so important in adjudicating claims of regulatory taking. In addition, the district court made no finding as to other key factors, which the parties continue to dispute, such as whether the signs are movable and therefore could be erected elsewhere, or whether the signs have any salvage value.

Another issue that the district court failed to consider concerns the effect on this case of N.C.Gen.Stat. § 136–131.1.[5] The Federal Highway Beautification Act mandates that a state pay cash compensation if a state forces the removal of billboards located along interstate or federal aid primary highways, or face the loss of ten percent of its federal funds allocated for state highways. 23 U.S.C. § 131(b), (g). To ensure compliance with the federal act, North Carolina enacted § 136–131.1, which provides that cash compensation must be paid for the removal of signs located beside federal or federally aided highways. The state statute originally was to expire on June 30, 1989, a few months before any of plaintiff's signs would be in violation of the Waynesville ordinance. Therefore, the parties and the district court paid the statute little heed because the statute appeared to afford plaintiff no protection. On the same day the district court issued its opinion, however, the North Carolina General Assembly extended the statute one year to June 30, 1990, and since then the North Carolina legislature has further extended the statute to June 30, 1994. See 1989 N.C.Sess.Laws, ch. 166, § 1.

The City claims that ten of the eighteen signs that plaintiff owns in Waynesville are located along federal aid primary highways and that Waynesville either must allow those signs to remain, or pay plaintiff cash compensation for their removal. In analyzing "the percentage of affected signs compared to the remaining signs in [plaintiff's] business unit" and "the relative value of affected and remaining signs," *Durham*, 844 F.2d at 178, the application and effect of the state statute is apparent and significant as long as the statute is in effect. Given North Carolina's potential loss of federal funds we see no reason why the state will not continue to extend the statute

---

the ordinance became effective. Moreover, many of the leases appear to have lapsed into a year to year arrangement that plaintiff can terminate at will, and some contain the following escape clause: "Should ... your enjoyment for display advertising purposes be prevented or impaired, then you shall have the right to cancel by giving us thirty (30) days advance written notice and we shall refund to you the unearned rental paid in advance." On remand, for example, the district court can make a more specific determination as to which leases, if any, plaintiff must continue to honor.

3. Although *Durham* was not decided until just before the district court's hearing on the parties' cross-motions for summary judgment, the parties did submit to the court supplemental briefs concerning *Durham's* applicability.

4. The parties apparently concede that finding of fact number four is erroneous, because the city is willing to accept plaintiff's estimate of $125,253 as the total construction and lease costs of the signs. *See* Brief of Defendant–Appellant at 13 n. 3. The $300,000 figure to which the district court refers is in fact plaintiff's estimate of the fair market value of the business, not its initial investment costs.

5. The parties are not in agreement as to whether or not N.C.Gen.Stat. § 136–131.1 has any application or effect on any of the issues or signs involved in this case.

indefinitely. In any event, its present extensions may well have affected this case, so the application and effect of that statute should be addressed on remand.

## IV.

In summary, because we concluded in *Waynesville I* that this ordinance advances a legitimate state interest, we vacate the district court's orders holding the ordinance unconstitutional on its face and enjoining enforcement of the same. The record is not fully developed on several key issues, however, and we are therefore unable to conduct the fact-specific analysis that is essential to evaluate plaintiff's claim. On remand, the district court should conduct such additional proceedings as are appropriate and "make findings pertaining to every aspect of [plaintiff's] business that will be affected by the ordinance," *Durham*, 844 F.2d at 178, including the factors discussed in some detail above and any others that appear relevant under *Keystone, Penn Central*, and *Durham*.[6]

As the Supreme Court has stated, "[t]he determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest.... [T]he question necessarily requires a weighing of private and public interests." *Agins v. Tiburon*, 447 U.S. 255, 260–61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). In addition, "[a] court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes.... '[T]his is a question of degree—and therefore cannot be disposed of by general propositions.'" *Mac-Donald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (citations omitted). It is only after a detailed factual examination, therefore, that a court in the ordinary case properly should ascertain whether a regulation effects a taking.

Such an examination in this case is now appropriate.

VACATED and REMANDED.

---

6. The district court still has not addressed, nor have we, plaintiff's state law claims. On re- mand, the district court should consider those issues, if appropriate.